# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

WYMEKIA DECKARD, O/B/O
K.L., a child,                                )
                                              )
          PLAINTIFF,                          )
VS.                                           )          CIVIL ACTION NO. H-08-03158
                                              )
MICHAEL J. ASTRUE,                            )
COMMISSIONER OF                               )
SOCIAL SECURITY                               )
ADMINISTRATION,                               )
                                              )
          DEFENDANT.                          )
                                              )

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending is Plaintiff's Motion for Summary Judgment (Document No.13). After considering the motions, the transcript of the administrative proceedings before the Social Security Administration, the evidence submitted by Plaintiff in connection with her Motion for Summary Judgment, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is DENIED, and that the decision of the Commissioner is AFFIRMED.

## I. Introduction

Plaintiff Wymekia Deckard ("Deckard"), on behalf of her daughter K.L., brings this action pursuant to U.S.C. § 405(g), seeking judicial review of an adverse final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim

for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C.

§ 1382c. Deckard argues that substantial evidence does not support the Administrative Law

Judge's ("ALJ") decision that K.L. does not have an impairment or impairments that meets,

equals, or is functionally equal in severity to a listed impairment in 20 C.F.R. Part 404, Subpart P,

Appendix I. Specifically, Deckard challenges the ALJ's failure to find at least "marked" limitations

in the following domains: attending and completing tasks, acquiring and using information, and

health and physical well-being. The Commissioner, in contrast, argues that the that there is

substantial evidence to support the ALJ's decision.


## II. Administrative Proceedings

On February 25, 2005, K.L.'s mother, Wymekia Deckard, filed an application for

Supplemental Security Income benefits(SSI) on behalf of K.L., alleging that she was disabled due

to asthma, Katagener's Syndrome, and dyslexia. (Tr. 25, 51). The claim was initially denied on

May 12, 2005, and upon reconsideration on August 12, 2005. (Tr. 22). Thereafter, a timely

written request for a hearing was filed on August 29, 2005. (Tr. 22). An administrative hearing

was held on March 5, 2008, at which Deckard testified as well as Steven S. Goldstein M.D., an

impartial medical expert, and Glenn F. Sternes, Ph.D., an impartial medical expert. At the time of

the hearing, K.L. was nine years old and in the third grade. (Tr. 27, 549).

On March 27, 2008, the ALJ issued the final decision of the Commissioner. (Tr. 19-34).

The ALJ found that K.L. had severe impairments of asthma, Kartagener's Syndrome, and

dyslexia. (Tr. 25). The ALJ also found that K.L.'s limitations resulting from the effects of her

impairments did not meet, medically equal, or functionally equal the criteria of any listed

impairment. (Tr. 25-26). In making this determination, the ALJ found that K.L. has no limitation

in the domain of "acquiring and using information;" less than a marked limitation in the domain of

"attending and completing tasks;" no limitation in the domain "interacting and relating with

others;"no limitation in the domain of "moving about and manipulating objects;" less than a

marked limitation in the domain of "ability to care for oneself;" and less than a marked limitation

in the domain of "health and physical well-being" (Tr. 30, 31, 32, 33, 34). Based on these

conclusions, the ALJ found that K.L. was not disabled and not entitled to children's disability

benefits. (Tr. 34). After the Appeals Council denied K.L's request for review, her mother filed this

action pursuant to 42 U.S.C. § 405(g).


### III.  Standard of Review of Agency Decision

Judicial review of the Commissioner's denial of disability benefits is limited under 42

U.S.C. § 405(g) to  whether the final decision is supported by substantial evidence on the record

as a  whole and whether the proper legal standards were applied to evaluate the evidence. *See*

*Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" means that the

evidence must be enough to allow a reasonable mind to support the Commissioner's decision: it

must be more than a mere scintilla and less than a preponderance. *See Richardson v. Perales*, 402

U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971); *Masterson*, 309 F.3d at 272; *Brown v.

Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

When applying the substantial evidence standard on review, the court "scrutinizes the

record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th

Cir. 2001) (citations omitted). If the Commissioner's findings are supported by substantial

evidence, they are conclusive and must be affirmed. *See Watson v. Barnhart*, 288 F.3d 212, 215

(5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible

evidentiary choices or medical findings support the decision. *See Boyd v. Apfel*, 239 F.3d 698,

704 (5th Cir. 2001). The court may not, however,  reweigh the evidence, try the issues *de novo*,

or substitute its judgment for that of the Commissioner. *See Masterson*, 309 F.3d at 272. In short,

"conflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson*,

309 F.3d at 272.

### IV. Availability of Childhood Disability Benefits

Supplemental security income ("SSI") benefits under Title XVI of the Social Security Act,

42 U.S.C. § 1381 et seq., are available to aged, blind and disabled individuals, including minors

who are disabled. See 42 U.S.C §§ 1382, 1382c. Under the provisions of the Social Security Act,

a child under the age of 18 is considered to be "disabled" for SSI if she has a medically

determinable impairment "which results in marked and severe functional limitations," and which

can be expected to last for a period of not less than 12 months. 42 U.S.C §1382c(a)(3)(C). In

determining whether a child is disabled and eligible for SSI benefits under the meaning of the

Social Security Act, a three-step evaluation is employed by the ALJ. First, the ALJ must

determine whether the child is engaged in substantial gainful activity. 20 C.F.R. §

416.924(b). If the child is not, then the ALJ determines if the child's impairment or combination

of impairments is severe. 20 C.F.R. § 416.924(c). The child will not be found to have a severe

impairment if it constitutes a "slight abnormality or a combination of slight abnormalities that

causes no more than minimal functional limitations." *Id.* If there is a finding of a severe

impairment, the ALJ must determine whether the impairment or impairments meets, equals, or is functionally equal in severity to a listed impairment. 20 C.F.R. § 416.924(d). For this inquiry, the ALJ must consider whether the applicant's impairment results in a marked limitation in two domains or an extreme limitation in one domain for the following: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A marked limitation is present where the impairment interferes seriously with one's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i)). An extreme limitation is present where one's impairment "interferes very seriously with [one's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I). In this case, the ALJ found that K.L. has not been engaged in any substantial gainful activity, and her Katagener's syndrome, asthma, and dyslexia are severe impairments. However, the ALJ found K.L. did not have an impairment or combination of impairments, that meets or medically equals one of the impairments in the disability regulations. *See* 20 C.F.R. Part 404, Subpart P, Appendix I.

## V. Discussion

### A. Medical Record

The earliest evidence shows that, on January 27, 1999, K.L., an 6-year old infant, was taken to the emergency room at Texas Children's Hospital because she had difficulty breathing and nasal congestion. (Tr. 292). K.L. was diagnosed with mild bronchiolitis and treated with nebulizer therapy.(Tr. 292). Subsequently, on January 29, 1999, K.L. was again taken to the

5

emergency room. (Tr. 236).  There she was diagnosed with pneumonia, bronchiolitis, situs inversus, and  dextrocardia.  (Tr. 236).  Also, the doctors presumed that she had Kartagener's Syndrome.[1] (Tr. 236, 341).  She was treated with nebulizer therapy and oxygen enrichment, and was released on February 13, 1999. (Tr. 236).  According to information provided by K.L's mother, K.L. developed asthma when she was 6 weeks old and was seen at Texas Children's hospital. (Tr. 411).  K.L.'s  medical records indicate that over the next two years she was taken to doctor several times regarding her physical ailments. (Tr. 296-393).  This included four trips to the emergency room on April 16, 1999, July, 13, 1999, November 4,1999, and  November 20,1999, regarding cold like symptoms.(Tr. 275,280, 284, 287-288).  After these visits, she was only hospitalized once more on April 8, 2005, for a viral infection.(Tr. 434).

On October 10, 2002, when K.L. was 3 ½, she was examined by Jorge A. Pinera, M.D. (Tr. 400).  Dr. Pinera found that K.L. physically was well developed, somewhat slender, alert, active, cooperative, and in no distress. (Tr. 401).  Also, K.L. was free of cardiovascular symptoms and no gastrointestinal or neurological abnormalities were noticed. (Tr. 400). Furthermore, based on the  objective evidence it appeared to him that K.L. was able to engage in age appropriate activities. (Tr. 401).  Again, on January 26, 2004, another examination of K.L. was performed by Dr. Pinera. (Tr. 411).  Here, Dr. Pinera found that K.L. was functioning well with infrequent episodes of asthma. (Tr. 411).  Further, K.L. was free of cardiovascular problems, and had no developmental abnormalities. (Tr. 411).  Based on the objective evidence, Dr. Pinera concluded

---

[1]Kartagener's Syndrome is a hereditary disorder involving a combination of dextrocardia, bronchiectasis, and sinusitis, transmitted as an autosomal recessive trait.

K.L. had no functional limitations in learning, motor functioning, performing self-care activities, communicating, or completing tasks. (Tr. 412).

## B. Issue Presented

Deckard contends that the Commissioner erred in finding that K.L. was not entitled to childhood disability benefits under Title XVI because she did not have an impairment or impairments that meets, equals, or is functionally equal in severity to a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix I. (Document No. 13). Specifically, Deckard challenges the ALJ's failure to find at least "marked" limitations in the following domains: attending and completing tasks, acquiring and using information, and health and physical well-being. (Document No. 13).Accordingly, Deckard argues that the substantial evidence in the record supports a finding of at least a "marked" limitation in each of these domains. (Document No. 13).

## C. Analysis

1. Attending and Completing Tasks

Deckard complains of the ALJ's failure to find that K.L's impairments result in an extreme or marked limitation in her ability to attend to and complete tasks. (Document No. 13). Deckard contends K.L. has difficulty completing homework assignments because she does not understand the material. Accordingly, Deckard alleges this forces her to have to repeatedly go over K.L.'s homework with her. Also, Deckard argues that K.L's Kartagener's Syndrome causes her asthma, to have a "cold for life," and affects her bowels, all conditions that cause K.L. to miss school.

Further, K.L.'s asthma requires breathing treatments every four hours, even while at school.
Deckard argues that when K.L.'s physical and mental impairments are considered in combination
she has a least a "marked" limitation in attending and completing tasks.

In determining a child's ability to attend and complete tasks, the ALJ is to consider how
well the child is able to focus and maintain her attention, and how well the child can begin, carry
through, and finish her activities, including the pace at which she performs activities and the ease
of changing activities. 20 C.F.R. § 416.926a(h). The regulations provide that a child of K.L's age:

> should be able to focus [her] attention in a variety of situations in
> order to follow directions, remember and organize your school
> materials, and complete classroom and homework assignments.
> [She] should be able to concentrate on details and not make
> careless mistakes in [her] work (beyond what would be expected in
> other children [her] age who do not have impairments). [She]
> should be able to change [her]  activities or routines without
> distracting [herself] or others, and stay on task and in place when
> appropriate. [She] should be able to sustain [her] attention well
> enough to participate in group sports, read by [herself] , and
> complete family chores. [She]  should also be able to complete a
> transition task (e.g., be ready for the school bus, change clothes
> after gym, change classrooms) without extra reminders and
> accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

In this case, the ALJ found that K.L. has less than a marked limitation in attending and
completing tasks due to her problems with missing school, and her difficulty in attention and
reading problems associated with her dyslexia.  (Tr. 31).  Substantial evidence in the record
supports this conclusion. Steven S. Goldstein M.D., testified that based on his review of the
objective medical evidence of the record as it relates to K.L.'s physical condition she would have
minor problems attending and completing tasks due to her missing school because of her asthma.

(Tr. 558).  However, K.L. has never missed school because of her asthma. (Tr. 551). Moreover, based on examination by Dr. Pinera, K.L.'s asthma seems to be mild, and she can engage in age appropriate activities. (Tr. 400). Further, K.L. is free of cardiovascular problems, and had no developmental abnormalities. (Tr. 411).  Moreover, Glenn Sternes M.D., a psychologist, explained K.L will have "less than marked" limitation in attending and completing tasks because of a learning disorder. (Tr. 563).  However, Dr. Sternes reported that K.L. had no behavioral characteristics that may affect her learning. (Tr. 562).  Moreover, Ms. Deckard reports that K.L is in the third grade which is the appropriate grade for her age. (Tr. 553).  Furthermore, she explained that K.L. is doing better in school because of the special education that she is receiving in reading. (Tr. 553-554). She now is reading at a second grade level as opposed to a first grade level. (Tr. 554).  On this record, substantial evidence supports the ALJ's finding in this domain.

2. Acquiring and Using Information.

Deckard argues, next, that the ALJ erred in finding that R.L's impairments do not result in an extreme or marked limitation in her ability to acquire and use information. Specifically, Deckard complains K.L. has a learning disorder known as Crystalized Intelligence based on her scores on the Wood-Cock Johnson III test. As a result of this disorder, Deckard alleges K.L has a problem with reading that affects her performance in other subjects, such as math. Furthermore, Deckard complains as a result of K.L's learning impairment, K.L. "has difficulty comprehending grade-level word meanings, comprehending classroom discussion, understanding jokes, analogies and/or figurative speech." Deckard contends based on this evidence K.L. has a least a marked limitation in acquiring and using information.

9

In determining a child's ability to acquire and use information, the ALJ is to consider how well the child is able to acquire or learn information, and how well the child uses the information she has 20 C.F.R. § 416.926a(g). The regulations provide that a child of K.L.'s age:

> should be able to learn to read, write, and do math, and discuss history and science. [She] will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. [She] will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). [She] should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

In this case, the ALJ found that K.L. no limitation in acquiring and using information. (Tr. 29).  Substantial evidence in the record supports this conclusion. Although K.L. had some low test scores, her General Intelligence Ability score indicates that her global intellectual functioning to be within the average range of intelligence. (Tr. 516).  Overall, K.L.'s cognitive profile suggests she can participate in the general education curriculum. (Tr. 516).  Moreover, neither current assessments nor information from K.L.'s home or school suggest that she presently has any serious emotional problems which interfere significantly with her ability to learn. (Tr. 515). Also, K.L.'s teacher reports she has great behavior, a positive attitude, and loves to learn. (Tr. 515).  Further, K.L's conversational proficiency appeared typical for her age. (Tr. 514). Additionally, the tester reported K.L. was adequately articulate, was able to follow directions for testing, respond to questions, take turns during conversation, and remain on topic. (Tr. 513).

However, Dr. Sternes reported she had a reading disability based on K.L's scores in the area known as word attack . (Tr. 562). Nonetheless, Dr Sternes opined K.L. had no limitation in her ability to acquire and use information. (Tr. 563). Furthermore, Deckard testified that K.L's reading was improving, and K.L. reports that she is good in math. (Tr. 514, 555). On this record, substantial evidence supports the ALJ's finding in this domain.

3. Health and Physical Well-Being

Finally, Deckard argues that the ALJ erred because it failed to find that K.L's impairments result in at least a marked limitation in the domain of health and physical well-being. Particularly, Deckard complains that K.L.'s physical ailments, asthma and Kartagener's Syndrome, along with her mental disabilities, dyslexia and Crystallized Intelligence, causes K.L. to have at least a marked limitation in health and physical well-being.

In determining a child's health and physical well-being, the ALJ is to consider the child's cumulative physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. § 416.929a(I).

In this case, the ALJ found that K.L. had less than a marked limitation in this domain based on her asthma and other infections, which would cause problems to her health. (Tr. 34). Substantial evidence in the record supports this conclusion. Despite allegations from Deckard that K.L. has been totally disabled since birth, the ALJ found no objective medical evidence to support this conclusion. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)( the ALJ may still accord greater weight to objective medical evidence than to the testimony of the parent). Even

11

though the K.L. has asthma, Deckard testified that it is under control with medications.  (Tr. 551).

Furthermore, when K.L. was examined in January 2004 her asthma was found to be mild and

intermittent with no sequalie. (Tr. 412).  Further, despite K.L.'s dextrocardia, there is no evidence

of cardiovascular problems due to it. (Tr. 411).  Despite the fact that K.L. has Kartagener's

Syndrome, nothing in the record supports the idea that  she has significant limitations from it

besides being forced to miss some days of school. (Tr. 550-551).  Additionally, an examination on

October 2002 concluded K.L. could engage in age-appropriate activities. (Tr. 401).  Also,

although K.L. has dyslexia and Crystalized Intelligence that affects her reading ability. (Tr. 516,

523), as already discussed, Deckard testified that K.L. is doing better with her reading and in class.

(Tr. 555). Moreover, from a physical point of view, Dr. Goldstein reported K.L would have a mild

limitation in health and physical and well-being. (Tr. 558).  Furthermore, Dr. Sternes opined that

K.L. had a less than marked limitation in this domain. (Tr. 563).  On this record, substantial

evidence supports the ALJ's finding in this domain.

### VI. Conclusion & Order

In sum, the ALJ's decision to deny disability benefits to K.L. was supported by substantial

evidence, and was therefore rendered in accordance with the law governing her claim. Based on

the foregoing, it is **ORDERED** that Plaintiff's Motion for Summary Judgment (Document No.13)

is **DENIED**, and that the Commissioner's decision that K.L. is not entitled to supplemental

security income benefits under Title XVI of the Social Security Act is **AFFIRMED.**

Signed at Houston, Texas, this 6th day of August, 2009.

Frances H. Stacy
United States Magistrate Judge